UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

VINCENT E. SARGENT,                    )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )        Case No. 1:17-CV-12 NAB
                                       )
STEVE LONG, et al.,                    )
                                       )
            Defendants.                )

## MEMORANDUM AND ORDER

Plaintiff Vincent E. Sargent ("Plaintiff" or "Sargent") filed this suit alleging that Defendants (all current or former employees of the Missouri Department of Corrections) violated his rights under the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act by discriminating against him based on his religion. This matter is before the Court on Defendants' Motion for Summary Judgment and Plaintiff's Motion for TRO/Preliminary Injunction.  (Docs. 39, 55.) The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 13.) For the following reasons, the Court will grant Defendants' Motion for Summary Judgment and deny as moot Plaintiff's Motion for TRO/Preliminary Injunction.

I.      **Procedural Background**

Sargent, an incarcerated person proceeding pro se, filed this action on January 17, 2017. In his Second Amended Complaint[1], he asserts that his First and Fourteenth Amendment Rights and rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, were violated by the Defendants regarding the type of meals served to Muslim

---

[1] Plaintiff titled his Second Amended Complaint the "Third Amended Complaint." In the order of June 22, 2018, the Court directed that Plaintiff's document be amended by interlineation as the Second Amended Complaint. (Doc. 27.)

prisoners during their holy month of Ramadan, the ban of religious oils, and the limitations placed on wearing of kufi headgear in prison. Defendants seek dismissal of the four claims contained in Plaintiff's Second Amended Complaint. In Count I, Plaintiff asserts that Defendants Thomas Shanefelter, Douglas Worsham, Robin Norris violated his First Amendment rights to freely practice his religion, his Fourteenth Amendment rights to equal protection and to be free from discrimination, and his rights under the RLUIPA regarding sack lunches provided during Ramadan. Counts II and III assert that Defendants Doug Worsham, Steve Johnson, Steve Long, and Dave Domire violated his First Amendment rights to freely practice his religion, his Fourteenth Amendment rights to equal protection and to be free from discrimination, and his rights under the RLUIPA, because they do not allow Muslim inmates to receive donations or purchase religious oils. Finally, Count IV asserts that Defendants Dwayne Kempker, William Stange, and Brandi Meredith violated his First Amendment rights and his Fourteenth Amendment right to equal protection and to be free from discrimination because they do not allow Sargent to wear a kufi as daily headgear.

Sargent requested that the Court order Defendants[2] to (1) accommodate fasting Muslim prisoners with halal[3] meals for the evening meals during Ramadan, (2) commemorate one Muslim holiday meal just as Christian holidays are commemorated, (3) allow Muslim prisoners to purchase two ounces of religious oil donations from valid vendors or Islamic Centers, (4) allow Muslim prisoners to wear kufis "like any other headgear," and (5) Defendants compensate Sargent $1,000.00 for his expenditures in prosecution of the action, and (6) costs be assessed to Defendants.

---

[2] Ten Defendants remain in this case. In addition to the nine Defendants identified in Counts I through IV, Sargent brought suit against Defendant Joseph Campbell. Although Campbell is not specifically identified in Sargent's claims, he has moved for summary judgment with the other nine Defendants.
[3] Halal is a term used to designate food that is prepared in a manner consistent with Islamic law. *See* https://www.merriam-webster.com/dictionary/halal (last visited December 7, 2020).

Defendants filed a motion for summary judgment asserting that they are entitled to judgment as a matter of law. (Doc. 39.) Sargent filed a Response in Opposition. (Doc. 48.) Defendants filed a Reply Brief. (Doc. 52.)  Sargent then filed a Motion for TRO/Preliminary Injunction. (Doc. 55.) Defendants have not filed a response, and the time to do so has passed.

## II.    Standard of Review

A party may move for summary judgment, identifying each claim or defense on which summary judgment is sought. Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civil P. 56(a). Federal courts must adhere to the axiom that "in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "A dispute is not 'genuine' unless the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party." *Herring v. Can. Life Assur. Co.*, 207 F.3d 1026, 1028 (8th Cir. 2000) (quoting *Anderson*, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993). At the summary judgment stage, the Court is not to weigh the evidence and decide the truth of the matter, but rather only determine if there is a genuine issue for trial. *See Tolan*, 572 U.S. at 656 (citing *Anderson*, 477 U.S. at 249).

## III.    Factual Background

The Court finds that the following facts, viewed in the light most favorable to Sargent, are material and undisputed for purposes of Defendants' Motion for Summary Judgment.[4]

### A.   Plaintiff's Religious Beliefs

Sargent, also known as Shahid Wali Muhammad, is an incarcerated person confined at the Southeast Correctional Center. He currently practices the Islam faith and is a member of the Al-Islam Muslim religious group. Ramadan is a twenty-nine or thirty day period of praying and fasting observed once a year by Al-Islam and Nation of Islam Muslims. The start of Ramadan changes every year, moving backwards on the calendar ten days every year according to the Islamic lunar calendar. During Ramadan, Al-Islam and Nation of Islam Muslims fast from dawn to sunset. The first day of Ramadan begins after dawn. When Ramadan occurs during warmer months, the time period for sunset occurs later.  Muslim inmates do not eat pork.

### B.   Religious Programming Advisory Council

The Religious Programming Advisory Council (RPAC) is a volunteer group representing various religions and spiritualities accommodated by the Department of Corrections (DOC) for inmates confined by DOC and meets twice yearly. Defendant Douglas Worsham is the Supervisor of Religious/Spiritual Programming with the DOC. His duties include meeting with the RPAC twice per year to address religious issues. Dr. A. Rashed Nizam is a member of the RPCA and serves as the community representative for the Muslim Islamic faith.

### C.   Provision of Meals During Ramadan

The DOC makes a certified religious diet available to inmates upon approval of the DOC Chaplain.  The certified religious diet contains no meat, but does contain protein.  It is food in its

---

[4] The facts listed are undisputed by the parties or supported by appropriate citations to the record as required by Local Rule 4.01(E). The Court has not included conclusory factual or legal statements or opinions in this fact section. *See Quinn v. St. Louis County*, 653 F.3d 745, 751-52 (8th Cir. 2011) (plaintiff needed to explain the legal significance of her factual allegations beyond mere conclusory statements importing the appropriate terms of art).

natural state or processed food that has been certified by an approved rabbinical authority. Inmates designating Al-Islam as their religious preference are eligible to receive foods from the certified religious diet. The meal plan offered to all general population inmates three times a day has a vegetarian option. Halal food items are not served to any inmates, including inmates in general population at Southeast Correctional Center. Halal food items are available for purchase in the prison canteen there.

The DOC instituted the practice of providing sack meals to any inmates observing Ramadan to be eaten after sundown. The sack meals provided for later consumption, and at a minimum, have nutritional value equal to meals provided to all general population inmates during the evening meal. The sack meals provided to all inmates observing Ramadan consist of a double entre portion, a vegetable portion, a fruit portion, a desert, and a drink. The most recent model menu of breakfast and dinner for inmates observing Ramadan during the thirty day period in 2018 shows they were provided a daily average of approximately 1857 to 2135 calories daily. The DOC typically follows this model menu during Ramadan. According to USDA nutrition dietary guidelines, males who were 60 years of age or younger who are either sedentary or moderately active should consume a minimum of 2200 to 2400 calories per day. The minimum caloric recommendation for males over 60 is between 2000 and 2400 calories per day.

**D.     Bottled Fragrance Oils**

The Islamic faith directs that Muslims be clean and odor-free while praying together. Bottled fragrance oils used by Muslims were previously sold in the prison canteens. The DOC found that the fragrance oil bottles were being used by some offenders to store unauthorized substances. Unauthorized substances in the prison pose a security concern for both staff and offenders. To address this security concern, the bottled fragrance oils have since been removed

for sale from all DOC canteens.[5] As of March 1, 2019, the DOC has made available for purchase inexpensive personal cleansing wipes as an alternative to bottled fragrance oils. Inmates who practice the Wiccan religion are allowed to obtain as a group three plastic vials containing one ounce of oil each for use in their religious ceremonies. The plastic vials are kept in the chaplain's office when not being used in the Wiccan religious ceremony. The Wiccans place a few drops of oil in a bowl of water during their religious ceremonial expression. The use of the oil in any other way, including personal application, is prohibited. The Wiccans as a group are allowed to have no more than three vials for their use at any one time. No oils are allowed for personal use by any Wiccans and cannot be placed on the inmate's personal property list.

### E.      Kufi Headgear

The DOC allows inmates to wear religious apparel in their cells and during religious services. Kufis are worn on the head and are considered to be religious apparel. Unless participating in a religious activity or required for work, inmates at Southeast Correctional Center are prohibited from wearing headgear of any type indoors. State-issued caps in limited colors with no writing are sold in the prison canteen.

## IV.   Discussion

### A.      Dismissal of Defendants Long, Dormire, Kempker, and Norris

First, Defendants Steve Long, Dave Dormire, Dwayne Kempker, and Robin Norris seek dismissal of the claims against them. Sargent's Second Amended Complaint seeks prospective

---

[5] On December 21, 2018, the DOC's Deputy Division Director of Adult Institutions stated that bottled fragrance oils were removed for sale from all DOC prison canteens. (Doc. 41-1, Affidavit of Michelle Kasak.) However, it appears the DOC's formal discontinuation of the sale of fragrance oils took place *after* Defendants filed their summary judgment motion. Sargent filed his Memorandum in Opposition to Summary Judgment and supporting materials on February 28, 2019. (Docs. 48, 49.) On March 1, 2019, the DOC issued a memorandum to all offenders stating that the sale of fragrance (prayer) oils has been discontinued, and offenders will have until September 1, 2019 to use the oils they currently have in their possession. (Doc. 53-12, Memorandum to All Offenders.)

injunctive relief against them. Long, Dormire, Kempker, and Norris no longer work for the DOC. Sargent admits that these defendants are no longer employed with the DOC.

Prospective injunctive relief is only available against state officials. *Randolph v Rogers*, 253 F.3d 342, 345 (8th Cir. 2001) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Prospective injunctive relief is no longer available against these Defendants, because they are no longer employed by the DOC. The actions required by an injunction would be impossible for these defendants to execute. *Randolph*, 253 F.3d at 346. Therefore, the Court will grant the motion to dismiss the claims of injunctive and declaratory relief against these defendants from this action. Because other Defendants are named in the claims, prospective and injunctive relief are available against the remaining Defendants. The Court notes that Sargent's Second Amended Complaint alleges the same conduct in Claims 2 and 3. Claim 2 is asserted against Defendants Worsham and Johnson and Claim 3 is asserted against Defendants Long and Dormire. Therefore, Sargent's claims in Claim 3 remain pending, because it is essentially the same conduct alleged in Claim 2 against Defendants Worsham and Johnson.

### B.     First Amendment and RLUIPA Claims

Sargent's Second Amended Complaint alleges violations of his First Amendment rights (Claims 1 through 4 relating to the issues of sack meals, religious oils, and kufi headgear) and of his statutory rights under RLUIPA (Claims 1 through 3 relating to sack meals and religious oils).

#### 1.   Legal Standards

"[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *Id.* (internal citations omitted). "Because prisoners

retain these rights, 'when a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." *Turner v. Safley*, 482 U.S. 78, 84 (1987) (citing *Procunier v. Martinez*, 416 U.S. 36, 405-406 (1974)). These First Amendment rights are limited, however, by considerations unique to the demands of the penal system. *Fegans v. Norris*, 537 F.3d 897, 902 (8th Cir. 2008). In balancing the constitutional rights of the prisoner with the valid objectives of the penal system, courts typically defer to prison authorities "who are actually charged with and trained in the running of the particular institution under examination." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). RLUIPA establishes a statutory free exercise claim "encompassing a higher standard of review than that which applies to constitutional free exercise claims." *Murphy v. Missouri Department of Corrections*, 372 F.3d 979, 986 (8th Cir. 2004).

To establish violations of the First Amendment and RLUIPA, a prisoner must demonstrate that the prison policies at issue substantially burden his ability to practice his religion. *See Gladson v. Iowa Dep't of Corrs.*, 551 F.3d 825, 833 (8th Cir. 2009). A substantial burden exists if the prison policy significantly inhibits or constrains religious conduct, meaningfully curtails an inmate's ability to express adherence to his faith, or denies an inmate reasonable opportunities to engage in fundamental religious activities. *See Van Wyhe v. Reisch*, 581 F.3d 639, 656 (8th Cir. 2009) (citation and quotation omitted). "Courts have generally found that no 'substantial burden' exists if the regulation merely makes the practice of a religious belief more expensive." *Patel v. U.S. Bureau of Prisons,* 515 F.3d 807, 813 (8th Cir. 2008).

If the prisoner fails to put forth sufficient evidence that his ability to practice his religion has been substantially burdened, then the court need not apply the rational basis test to the Free

Exercise claim and the strict scrutiny test to the RLUIPA claim."[6] *See Gladson*, 551 F.3d at 831. Once it is determined that a regulation imposes a substantial burden on a prisoner, the review of that burden under the Free Exercise Clause differs from the RLUIPA. *Patel*, 515 F.3d at 813.

### a. Free Exercise Clause

Under the Free Exercise Clause, if the Court finds that that the regulation creates a substantial burden on the inmate's constitutional rights, then the Court analyzes whether the regulation "is reasonably related to legitimate penological interests." *Murphy*, 372 F.3d at 982 (citing *Turner*, 482 U.S. at 89). A court must examine the four *Turner* factors to determine whether the prison regulation is reasonably related to legitimate penological interests: (1) whether there is a valid, rational connection between the challenged regulation and the government interest put forth to justify it; (2) the continued availability of other means for prisoners to exercise the right at issue; (3) the effect that accommodation of the right would have on other prisoners, on prison staff, and on prison resources; and (4) the existence of ready alternatives to the challenged regulation. *Goff v. Graves*, 362 F.3d 543, 549 (8th Cir. 2004). Great deference is given to the judgment of prison officials, "particularly with respect to decisions that implicate institutional security." *Goff*, 362 F.3d at 549.

### b. RLUIPA

Under the RLUIPA:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is

---

[6] A prison policy that satisfies the RLUIPA's strict scrutiny test necessarily satisfies the rational basis test applied for First Amendment purposes. *See Gladson*, 551 F.3d at 831 (under First Amendment, government must show that prison policy is reasonably related to a legitimate penological objective).

> the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.A. § 2000cc-1(a). Once a plaintiff makes a showing of substantial burden, the burden shifts to the government to demonstrate that the prison policy is the least restrictive means of achieving a compelling government interest. *See* 42 U.S.C. § 2000cc–1(a)(1)–(2); *Van Wyhe*, 581 F.3d at 648–49.

Under RLUIPA, religious exercise "includes any exercise of religion, whether or not compelled by, or central to a system of religious belief." 42 U.S.C.A. § 2000cc-5. The concept of religious exercise is to be "construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the [RLUIPA] and the Constitution." 42 U.S.C. § 2000cc-3(g). The statutory language also acknowledges that RLUIPA "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." 42 U.S.C. § 2000cc-3(c). "[A] prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015). "RLUIPA's substantial burden inquiry asks whether the government has substantially burdened religious exercise, … not whether the RLUIPA claimant is able to engage in other forms of exercise." *Holt*, 574 U.S. at 361-62. "RLUIPA does not 'elevate accommodation of religious observances over an institution's need to maintain order and security.'" *Fegans*, 537 F.3d at 902 (citing *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005)).

## 2.  Meals for Muslim Inmates During Ramadan

Sargent's Complaint alleges Defendants violated his rights by providing cold sack meals during Ramadan. This claim is asserted against Defendants Shanefelter, Worsham, and Norris.

Sargent argues that the sack meals punish the inmates who fast for Ramadan and discourages Muslim inmates from their religious duty to fast. In his deposition, Sargent states

that he should not be "forced to eat a cold meal." He also states, "Just because I am Muslim doesn't mean I shouldn't be able to receive a hot meal." He asserts that the DOC should provide fasting Muslim inmates with a microwaveable Halal meal and a hot meal like the other inmates. Sargent's deposition testimony confirms that hot meals during Ramadan are not required as a religious practice, but a preference. Sargent also confirms that he can and has purchased microwaveable food through the canteen to supplement the cold sack meal provided by the DOC. He asserts that he should not have to purchase hot meals and that the DOC should provide hot meals. Sargent confirms that there is nothing in the meals provided that is contrary to the tenets of his faith. Finally, Sargent states that the fasting inmates are not given three meals a day like the rest of the general population and the evening meal does not provide enough nutrition to make up for the missed meal.

The DOC asserts that it is entitled to summary judgment on Sargent's First Amendment claim. In support of their motion, Michele Kasaki, Deputy Division Director of Adult Institutions for the DOC, averred in an affidavit the following. DOC dining room staff typically work no later than 7:00 p.m. on any day. During Ramadan, it would be extremely burdensome financially to provide adequate staff to work after regular hours to allow Muslim inmates to eat meals in the dining room. Inadequate staffing poses a security risk to the safety of both staff and inmates in the correctional facilities. Therefore, the DOC provides cold sack meals to offenders observing Ramadan so they can eat after sundown. Further, the DOC asserts that the USDA recommends 2200 to 2400 calories per day for sedentary or moderately active males who are 60 years old are younger and between 2000 and 2400 calories per day for males over the age of 60. The daily average caloric intake offered to inmates during Ramadan in 2018 was 1857 to 2135 calories per day.

Based on the evidence presented, the Court finds that Sargent has not established a substantial burden on his ability to practice his religion. Sargent admits that the consumption of hot meals during Ramadan is not a central tenet of his faith. Although Sargent states that the cold meal and lack of fulfillment can deter someone from fasting, he admits that he personally has not been deterred him from fasting and he adds to his meals from the canteen, including microwaveable and halal items from the canteen. The variable difference in caloric intake of between 143 and 343 calories is not significant enough to create a substantial burden when Sargent has testified in his deposition that he has been able to supplement his evening meal with hot food and additional calories. Moreover, the Eighth Circuit has held that the failure to provide halal meals does not substantially burden an inmate's ability to practice his religion. *See, e.g.,* *Pratt v. Corr. Corp. of Am.*, 267 F. App'x 482 (8th Cir. 2008) (plaintiff did not show defendants placed a substantial burden on his ability to practice his religion by failing to provide him with halal meat); *Patel,* 515 F.3d at 810-812 & n.8 (prison's meal plan regulations did not substantially burden Muslim inmate's free exercise rights where inmate had access to only vegetarian entrees, and some of those entrees he had to pay for himself). Sargent has not shown that providing sack meals during Ramadan for consumption after sundown significantly inhibits, meaningfully curtails, or denies Sargent a reasonable opportunity to practice his religion. Because Sargent has not put forth sufficient evidence that a reasonable jury could conclude his ability to practice his religion has been substantially burdened, Defendants are entitled to summary judgment on this claim.

### 3.  Oil Purchases or Donations

In Claims 2 and 3, Sargent alleges Defendants violated his rights by refusing to allow him to receive oil donations or to purchase religious oils from a valid Islamic or Islamic center, and

Defendants violated his rights by directing the DOC to discontinue the sale of fragrance oils in the inmate canteen.  Claim 2 is asserted against Defendants Worsham and Johnson. Claim 3 is asserted against Defendants Long and Domire.

Defendants argue that the discontinuation of the sale of bottled fragrance oil does not violate the religious tenets of Islam because there is no requirement that Muslims apply fragrance oils to their bodies. Sargent responds that he uses prayer oils in his religious services, and his rights are being infringed upon by not being allowed to purchase religious oils from a verified Islamic vendor or from the canteen. Defendants reply that the DOC now makes disposable personal cleansing wipes available for cleansing to satisfy religious practices.

As an initial matter, the Court finds that there are disputed facts as to whether the use of oils is required by Sargent's religious beliefs. The RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 20000cc-5(7). Despite Defendants' contention that there is no requirement that Muslims use fragrance oils, Plaintiffs' evidence reflects that Defendant Kemper acknowledges that oils "are suitable for use for Islamic religious purposes." (Doc. 48-2 at 17, February 10, 2015 Grievance Appeal Response.) Whether or not the use of oils is required by Sargent's religious beliefs is a factual determination, which should not be quickly dismissed on summary judgment. *See Murphy,* 372 F.3d at 988. For purposes of summary judgment, it is appropriate to assume that Sargent's belief that use of oils is required for his communal worship is an exercise of religion under the RLUIPA.

Even with this assumption, Sargent must still show that Defendants have substantially burdened his religious exercise by no longer selling oils or allowing outside vendors to donate or sell oils to offenders. Several courts have found that prison regulations imposing similar

13

prohibitions on possession of worship materials does not constitute a substantial burden on the practice of religion where an inmate has not established that such a burden exists. *See, e.g., Hodgson v. Fabian*, 378 Fed.Appx. 592, 593 (8th Cir. 2010) ("We agree with the district court that Hodgson did not establish that either his ability to keep prayer oils in his cell or a delay in receiving his religious mail substantially burdened his religion."); *Willard v. Hobbs*, 2009 WL 2497637, at *10 (E.D. Ark. Aug. 12, 2009) (plaintiff failed to show denial of essential oils created a substantial burden on the exercise of his religion under the First Amendment or RLUIPA).

However, the Court need not resolve whether Sargent's failure to present evidence concerning the alleged substantial burden on his ability to practice his religion entitles Defendants to summary judgment. Even if the Court assumes the denial of access to oils imposes a substantial burden, Defendants have presented undisputed evidence showing that their decision to make inexpensive disposable towelettes available for purchase as an alternative to selling bottled fragrance oils is the least restrictive means to further a compelling interest under the RLUIPA. While this test imposes a high burden on prison officials, this court must accord "a significant degree of deference to the expertise of prison officials in evaluating whether they met that burden." *Hamilton v. Schriro*, 74 F.3d 1545, 1554 (8th Cir. 1996). Defendants provided evidence of safety and security concerns supporting this decision. Some offenders were using the bottles to hide contraband, and unauthorized substances entering the prison is a security concern for the safety of the staff and offenders. The discontinuation of selling bottled fragrance oil and the prohibition of donated or outside-purchased oils serve the compelling government interest of enhancing prison security through minimizing contraband. *See Singson v. Norris*, 553 F.3d 660, 662–63 (8th Cir. 2009) ("safety and security are compelling government interests"); *Fegans*, 537

F.3d at 903 (in absence of substantial evidence indicating officials have exaggerated response to prison security considerations, courts should ordinarily defer to their expert judgment).

In his opposition, Sargent does not comment on the proposal of inexpensive disposable towelettes as an alternative, nor does he offer his own alternative means to exercising his religion that addresses the DOC's security concerns. Instead he argues that Defendants' concerns regarding the oils being infused with narcotics is not well-founded, pointing to what appears to be a memo produced by the DOC. The memo reflects that drug testing of the oils sold in the canteen can produce false positives for amphetamines, and that it would be very unusual for amphetamines to be found in the oils that were sealed in the manufacturer-supplied containers. (Doc. 48-2 at 26-28.) While this evidence arguably minimizes a concern regarding the infusion of amphetamines in the oils, the tests were conducted on sealed bottles from the manufacturer that were for sale in the canteen. Sargent does not address the concerns regarding receipt of oil bottles from outside vendors or concealment of non-amphetamine contraband within the oil bottles. He provides no evidence to establish less restrictive alternatives that serve Defendants' security interests.

On the other hand, Defendants' alternative means of making personal cleansing wipes available for purchase in the canteen, in addition to soap and deodorant already available, allows for Sargent and any inmate who uses cleansing products "as part of a particular faith practice and/or other personal cleansing needs" to be clean and odor-free while in prayer. (Doc. 41-3, Affidavit of Douglas Worsham; Doc. 53-11, Supplemental Affidavit of Douglas Worsham; Doc. 53-12, March 1, 2019 Memorandum to All Offenders Re: Discontinuation of Fragrance (Prayer) Oils.) Given the alternative means of disposable towelettes to allow Sargent to be clean and odor free for communal prayer and the lack of evidence regarding less restrictive means of furthering

the DOC's security and safety interests, the Court finds that there are no disputed facts with respect to Sargent's RLUIPA claims based on the unavailability of oils. Because summary judgment in favor of Defendants is warranted under the more stringent requirements of the RLUIPA, the Court finds that Defendants also have a legitimate penological interest in protecting the safety and security of staff and inmates by prohibiting access to oils, and that Sargent has failed to create a disputed fact issue as to whether Defendants violated his First Amendment rights.

### 4. Kufi Headgear

Claim 4 is asserted against Defendants Kemper, Stange, and Meredith. Sargent offers no evidence that being allowed to wear a kufi only during religious activities or in his cell, as opposed to wearing it all the time, substantially burdens his religious exercise. *See Rogers v. Scurr,* 676 F.2d 1211, 1216 (8th Cir. 1982) ("We find that no constitutional right of the prisoners was violated by the prohibition on wearing prayer caps and robes outside religious services."); *see also Junaid v. Kempker*, No. 4:04CV57 CDP, 2009 WL 881311, at *8 (E.D. Mo. Mar. 27, 2009) (only allowing kufi during religious activities did not impose a substantial burden under RLUIPA and the Free Exercise Clause); *Jihad v. Fabian*, 2011 WL 1641885, at *17 (D. Minn. Feb. 17, 2011), *report and recommendation adopted,* 2011 WL 1641767 (D. Minn. May 2, 2011) (no substantial burden from policy prohibiting plaintiff from wearing a kufi or displaying an Islamic medallion while outside his cell). Accordingly, this Court finds that because Sargent has not put forth sufficient evidence that a reasonable jury could conclude that his ability to practice his religion has been substantially burdened, Defendants are entitled to judgment as a matter of law on Sargent's First Amendment claim regarding kufi headgear.

Lastly, although Defendants do not directly address Sargent's Establishment Clause claim, his Second Amended Complaint and summary judgment opposition both make reference to the Establishment Clause as a basis for Claim 4 regarding the DOC's limitations on wearing kufi headgear. The Establishment Clause of the First Amendment prohibits any "law respecting an establishment of religion." U.S. Const. Amend. I. The test for an Establishment Clause claim is set forth in *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971), which provides that the government action does not violate the Establishment Clause if it has a secular purpose, does not have a primary effect of advancing or inhibiting religion, and does not result in excessive entanglement with religion. *Id.* at 612–13. Here, the DOC's purpose in limiting the use of any headgear (not just kufi headgear) indoors unless participating in a religious activity or required for work is to provide a safe environment for offenders and staff. Sargent has presented no evidence to suggest the DOC exclusively promotes or favors any particular religion in its headgear policy. The primary effect of this policy is not to inhibit Sargent's religion, but to protect the inmates and staff. Accordingly, to the extent Sargent intends to bring this First Amendment claim based on the Establishment Clause rather than the Free Exercise Clause, Defendants are still entitled to summary judgment as a matter of law. *See Murphy,* 372 F.3d at 985; *Izquierdo v. Crawford,* No. 1:05CV192 CDP, 2007 WL 2873210, at *8 (E.D. Mo. Sept. 26, 2007) ("Defendants are also entitled to summary judgment on this claim because the uncontradicted evidence shows that the defendants' actions had a secular purpose and did not advance or inhibit religion.").

For the reasons discussed in this section, the Court concludes that Defendants have demonstrated there is no genuine dispute of material fact and they are entitled to judgment as a matter of law on Sargent's claims that Defendants violated his rights under the RLUIPA, the

Free Exercise Clause, and/or the Establishment Clause. For the same reasons, Defendants' motion for summary judgment on these points will be granted.

### C.      Fourteenth Amendment Equal Protection Claims

Sargent's Second Amended Complaint alleges violations of the Equal Protection Clause of the Fourteenth Amendment in each of his four claims. The Equal Protection Clause requires that the government "treat similarly situated people alike." *Murphy,* 372 F.3d at 984 (internal citations omitted)). To establish an equal protection claim, Sargent must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon a suspect classification or a fundamental right. *See Patel v. United States Bureau of Prisons*, 515 F.3d 807, 816 (8th Cir. 2008). Religion is a suspect classification, and therefore, Sargent must show that the decision of the Defendants was motivated by intentional discrimination and furthered no legitimate penological interest. *See id.* at 816–17; *see also Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999). The Court will address each claim of an equal protection violation in turn.

### 1.   Meal for Muslim Inmates During Ramadan

In Claim 1, Sargent alleges he is denied the same meal that is served to the general prison population for the evening meal during the month of Ramadan, and that Jewish inmates are accommodated with kosher meals.

To the extent Sargent's equal protection claim is based on the allegation that he is not receiving the same meal as the general prison population, this claim fails because Sargent has not shown that the general prison population is a similarly situated group, or that the prison meal policies were applied unequally. There is no evidence that Sargent is unable to receive the meals that the general prison population receives during Ramadan. On the contrary, the purpose of

providing sack meals during Ramadan is to accommodate Muslim inmates who need to eat later than the general prison population because they elect to fast as part of their religion.

Sargent also argues that he is treated differently than Jewish inmates, who are accommodated with kosher meals and a kosher canteen list, while Sargent does not get halal meals. Even assuming Sargent has been treated differently than similarly situated inmates, Sargent "must show that the decision to serve kosher entrees but not *halal* entrees was motivated by intentional or purposeful discrimination." *See Patel*, 515 F.3d at 816. Sargent has not presented any evidence suggesting Defendants or the DOC had a discriminatory purpose. Defendants presented competent evidence to show that the DOC provided sack meals specifically to accommodate inmates with diet restrictions based on religion. The canteen has available halal items for purchase, and Sargent purchases and consumes the halal items as part of his diet. Prior to serving sack meals during Ramadan, Defendant Worsham spoke with the Director of the Leadership Development Center which is part of the Islamic Society of North America regarding the requirements of the Muslim faith. Defendants have shown that the DOC is making an effort to address issues relating to all religions, including the Islamic faith. Sargent cannot establish a discriminatory purpose in providing him sack meals for his evening consumption during Ramadan and/or failure to provide halal meals. Because Sargent has not presented sufficient evidence to demonstrate a factual dispute concerning the issue of whether the food policy was motivated by discriminatory intent, his equal protection claim lacks merit as a matter of law.

### 2.   Oil Purchases or Donations

In Claims 2 and 3, Sargent alleges Catholics and Wiccans are allowed to receive and purchase religious oils but Muslims are denied the same treatment.[7] Sargent appears to be claiming that Muslims have been treated differently than Catholics and/or Wiccans because Wiccans are allowed to purchase religious oils and Sargent cannot. In support of this claim, Sargent submits DOC requisition forms that reflect canteen purchases made in 2015 for "Chapel Allotment-Wicca." (Doc. 48-2 at 13-16.) The materials purchased include fragrance oils. Sargent also submits a February 10, 2015 grievance appeal response from Defendant Kemper. Defendant Kemper rejected Sargent's request to receive oil from outside vendors and donations, explaining that that in 2015 oils were available for purchase in the canteen and therefore could not be purchased from outside vendors, regardless of religion. (Doc. 48-2 at 17.) Sargent also submits the Affidavit of Wyman Hussey. (Doc. 48-1.) Mr. Hussey identifies himself as a faith facilitator for inmates that practice the Wiccan faith and states Wiccans are allowed to order religious oils. Sargent argues this evidence makes which make it "clear that the [M]uslims were treated different in their request for religious oils."

In their reply, Defendants have submitted competence evidence demonstrating that the sale of bottled fragrance oils has been discontinued due to safety and security concerns. Wiccans are still allowed to have a maximum of three one-ounce vials of oil in the chaplain's office and may use the oil by putting a few drops in a bowl of water to create a fragrant worship environment. However, as of September 1, 2019, no inmate may have bottled fragrance oils as part of their personal property. Moreover, no inmate may use fragrance oils for application on their person. These policies apply to all inmates, including Muslims and Wiccans. As a result,

---

[7] Claim 3 references a right to equal protection under the Fourteenth Amendment, although the allegations therein do not state an equal protection claim. Further, as discussed above, the Claim 3 Defendants, Long and Dormire, are no longer DOC employees such that prospective injunctive relief is no longer available against these Defendants. Nevertheless, because Claims 2 and 3 contain similar allegations, and Claim 2 includes references to other religious groups' use of oils, the Court construes Claim 3 to include the allegations contained in Claim 2 with respect to other religious groups and includes Claim 3 in its equal protection analysis.

Sargent cannot show that he has been treated differently from similarly situated prisoners because of his religion.

Even if Sargent could show that Muslims and Wiccans were similar groups that were treated dissimilarly, Sargent has not alleged or provided evidence to support that any alleged disparate treatment was motivated by intentional discrimination. Further, as explained above, Defendants have a legitimate penological interest in protecting the safety and security of staff and inmates by prohibiting access to oils. Thus, Sargent's Equal Protection Claim on this basis fails. *See Patel,* 515 F.3d at 816-817; *Izquierdo,* No. 1:05CV192 CDP, 2007 WL 2873210, at *8 (defendants are entitled to summary judgment on Equal Protection claim where the dissimilar treatment is rationally related to legitimate penological interests).

### 3.  Kufi Headgear

In Claim 4, Sargent alleges that the DOC's headgear policy constitutes discrimination against kufi headgear, "a hat that [he is] allowed to own and freely possess, but can only wear during prayer." In his opposition to summary judgment, Sargent claims the limitations on wearing kufis is a violation of his Equal Protection rights, and Defendants' safety and security interests are a "blanket defense for challenges to prison policies or actions." Sargent's unsupported legal conclusions do not suffice to establish a disputed fact to overcome summary judgment. Sargent argues the headgear policies have never been regularly applied, but he does not identify any group that receives different treatment. "To survive summary judgment, [Sargent] must identify the characteristics of the class he claims to be similarly situated to and present some evidence that other groups within the class were not also restricted in similar ways." *Murphy,* 372 F.3d at 984. Sargent has failed to do so. Because there is no evidence to

support the claim that the headgear restrictions were applied unequally, summary judgment is appropriate on this claim. *See id.*

For the reasons discussed in this section, the Court finds that there is no genuine fact dispute regarding whether Defendants violated Sargent's equal protection rights under the Fourteenth Amendment. Defendants are entitled to judgment as a matter of law on these claims, and their motion for summary judgment on these points will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment (Doc. 39) is **GRANTED,** and Plaintiff's Second Amended Complaint (Doc. 28) is **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's motion for temporary restraining order and/or preliminary injunction is **DENIED as moot**. (Doc. 55.)

A separate judgment in accordance with this Memorandum and Order is entered the same date.

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of December, 2020.